BABCOCK & WILCOX CO. v. WORLD'S COLUMBIAN EXPOSITION CO. et al.

(Circuit Court, N. D. Illinois. February 23, 1893.)

INJUNCTION—CORPORATIONS—WORLD'S FAIR.

Complainant had an understanding with a representative of an exposition company that it was to supply certain additional boilers, if required for use in the exposition building, the boilers to be used also as exhibits. The representative told complainant that the arrangement would have to be submitted to the company for approval, but this was never done. The company was only authorized to erect and equip the building, the control of the exhibits being vested in a commission appointed by congress. *Held,* that complainant was not entitled to an injunction to prevent the use of other boilers in the building.

In Equity. Suit by the Babcock & Wilcox Company against the World's Columbian Exposition Company and others to enjoin the defendants from allowing the Sterling Boiler Company to put its boilers in machinery hall. Bill dismissed.

W. E. Mason, for complainants.
E. Walker, for defendants.

GROSSCUP, District Judge. The Columbian Exposition will, when completed next summer, be the product of two agencies, namely, the World's Columbian Exposition Company, a corporation under the laws of the state of Illinois, and the World's Columbian Commission, representing the United States. The former is the agency of Chicago and Illinois, to give to the exposition a home; the latter is the hand of the government, which makes it a national enterprise. To the former belongs the duty and power of looking to the erection of the necessary buildings and their equipment for the purposes designated, such as the supply of heat, power, light, water, etc.; to the latter is given the duty of installing the exhibits, and administering the exposition in all its branches as a great national enterprise. This general line of demarcation between the duties and powers of these respective agencies is easily traced, but in the practical application of these powers so many of their incidents apparently overlapped each other that complications were certain to arise. To meet these instances, and avoid a clash between the two agencies, a council of administration, composed of two members from each board, was created. To this council was given the absolute and final jurisdiction and control over all matters of general administration of the exposition, including the installation of exhibits, and the expenditures of all moneys for work and material exceeding $2,000 in amount. Some time early in 1892, the Illinois corporation entered into a contract with six companies and persons constituting what was called the "Temporary Association," to supply the exposition with a steam-boiler plant. The complainants were not included in this contract, but subsequently were substituted for another company in the Temporary Association, and accordingly furnished to the exposition, and set up in its machinery hall, a number of their boilers as a part of the same plant. The understanding

was that these boilers should also be installed as exhibits, and, on account of the advantages flowing to the members of the association from this feature, the consideration received was regarded as much less than the actual cost of putting in the boilers.   In the portion of machinery hall in which these boilers were set up, there remained a further space which, it was understood, might be occupied by other boilers, if the same were found necessary to the requirements of the exposition.   The complainants claim that they had an understanding and agreement with one Sargent, representing the chief of construction and the local corporation, under which they were to have the exclusive privilege of putting in these additional boilers, if needed, and making them an exhibit in the same manner that the boilers already contracted for were to be exhibits; that in reliance on this understanding, they proceeded to make their boilers according to certain plans and specifications, and were ready and willing to place them in the space allotted; but that the exposition company refused to abide by this understanding, and is about to allow another company, known as the "Sterling Boiler Company," to supply this additional plant.   The complainants aver that the exhibit feature of this alleged privilege was the chief inducement for their entering into it; and that the damages they would suffer from failure to enjoy it are so indefinite and uncertain in amount, and yet so actual and decided, that a court of law could not give them full relief; and therefore pray that this court order the alleged understanding or agreement to be specifically performed, and grant an injunction restraining the company from putting in the boilers of any other company.

The granting of the relief prayed for is entirely within the discretion of the court, but, before that jurisdiction can be exercised, the judgment of the court must be satisfied—First, that an understanding actually existed, and was mutually regarded by both parties as a subsisting and binding obligation between them; second, that Sargent had authority to enter into such an agreement; third, that the reasons assigned for the interposition of a court of equity by injunction or specific performance are applicable to the situation brought to the attention of the court.   I am of the opinion that the complainants have failed to establish either of these propositions.   There were unquestionably conversations out of which an impression such as the complainants insist upon would naturally arise, but I fail to find any clear, definite, or satisfactory evidence that the parties understood they were entering into a mutual obligation such as is claimed.   Sargent expressly testifies that he told the representative of the complainants that the promise of the privilege held out by him would first have to be submitted to and approved by the council of administration.   He and the complainants probably thought there would be no difficulty in receiving such approval, but the negotiation certainly could not have been regarded by them as final while in this state of possible uncertainty.   As a matter of fact, the proposed privilege was never submitted to the council, and complainants were never advised that it had received the approval of that body.   It is equally clear that Sargent had no power to grant

a privilege of that character. It fell partly, at least, within the powers of the commission, and there is nothing in this case showing that he in any respect represented the commission. When he announced to the complainants that the matter of the privilege must first go to the council of administration, he, in effect, expressly advised them of the limitation upon his authority.

But even if the agreement was made as claimed, and Sargent had authority to enter into it, from the Illinois corporation,. it would, in my mind, be a case in which the relief prayed for could not be granted. Nothing is clearer than that the installation of the exhibits is exclusively within the control of the commission. In respect of these, the local corporation and its agents have no authority. It is true that these boilers were to be placed for the double purpose of affording steam power and an exhibit. In the first aspect, they might fall within the powers of the local corporation, but, in the second, they would clearly fall within the exclusive control of the commission. Now, the injury complained of, and upon which the jurisdiction of a court of equity is predicated, is not that the complainants will suffer any less on account of these boilers being excluded from the steam plant, but that they will suffer loss by the exclusion of them as exhibits. They admit that, but for the exhibit feature of this alleged privilege, the contract would be of no value to them. The boilers could be sold to the trade for a greater sum than the alleged contract price. Their complaint, therefore, is essentially and exclusively a complaint against being allowed to install an exhibit. The testimony nowhere shows that the commission, or either of its authorized agents, have ever allotted to them this space, or agreed that they might install this exhibit. Indeed, it is doubtful if the court could, under any circumstances, interfere with the discretion of the director general. For these reasons, the injunction is refused, and the bill dismissed.